# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KATHLEEN G. SCHULTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 2387 |
| | ) |
| THE PRUDENTIAL INSURANCE, | ) Judge Ruben Castillo |
| COMPANY OF AMERICA | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Kathleen G. Schultz ("Schultz") brings this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* and various state laws. Schultz seeks to recover long-term disability ("LTD") benefits under the Long Term Disability Plan by Aviall, Inc. (the "Aviall Plan"), which was maintained by her former employer, Aviall, Inc. ("Aviall") and issued by the Prudential Insurance Company of America ("Prudential"). (R. 27, Am. Compl.) In her complaint, she also seeks recovery on behalf of participants of other plans. (*Id.*) Presently before the Court is Prudential's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). (R. 13, Def.'s Mot. to Dismiss.) For the reasons stated below, the motion is granted.

## RELEVANT FACTS

Schultz was employed by Aviall as a full-time Operations Administrator. (R. 27, Am. Compl. ¶ 11.) On November 30, 2006, she stopped working due to a disability. (*Id.*) The Social Security Administration (the "SSA") found Schultz to be disabled as of December 1, 2006 and awarded her monthly social security disability benefits beginning May 2007. (*Id.* ¶ 13.)

Schultz's four dependents became entitled to monthly social security child benefits ("dependent social security benefits") beginning May 2007. (*Id.* ¶ 14.)

On April 30, 2007, Schultz was approved for LTD benefits under the Aviall Plan, which is governed by ERISA. (*See id.* ¶¶ 12, 27-28, 36.) Schultz subsequently informed Prudential that she was to begin receiving monthly social security disability benefits from the SSA. (*Id.* ¶ 15.) Prudential terminated Schultz's LTD benefits under the Aviall Plan on December 14, 2007, on the claimed grounds that she was capable of sedentary occupation. (*Id.* ¶ 16.)

Approximately fifteen months later, on February 15, 2009, Prudential reversed its initial termination decision and determined that Schultz was disabled. (*Id.* ¶ 18.) As a result, it found that Schultz was entitled to retroactive LTD benefits dating back to December 14, 2007. (*Id.*) Moreover, on March 2, 2009, Prudential determined that Schultz would be entitled to prospective LTD benefits subject to her continuing satisfaction of the Aviall Plan's contractual requirements. (*Id.* ¶ 19.)

In a letter dated March 11, 2009, Prudential informed Schultz that her retrospective and prospective LTD benefits would be reduced by the social security benefits she and her dependents received. (*Id.* ¶ 20.) Prudential's decision to deduct these benefits from the LTD benefits she received was based on the following Aviall Plan language defining deductible sources of income: "[t]he amount you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under: (a) the United States Social Security Act." (*See id.* ¶ 10.) About a week later, Schultz appealed this decision. (*Id.* ¶ 21.) In her appeal, Schultz demanded that Prudential stop reducing her LTD benefits by the dependent social security benefits received by her children. (*Id.*) Additionally, she requested that the

retrospective LTD benefits to which she was entitled not be offset by her dependents' social security benefits. (*Id.* ¶ 21.)

On March 25, 2009, Prudential requested approximately two weeks to complete a review of Schultz's appeal. (*Id.* ¶ 22.) In response, Schultz informed Prudential that she would delay filing a suit challenging Prudential's decision until April 17, 2009. (*Id.*) According to Schultz, Prudential failed to provide a timely response to her appeal. (*Id.*)

## PROCEDURAL HISTORY

Schultz originally brought this action on behalf of herself and other similarly situated individuals on April 20, 2009. (R. 1, Compl.) On August 17, 2009, Schultz filed an amended complaint (the "complaint"). (R. 27, Am. Compl.) In Count I of the complaint, Schultz alleges that Prudential's reduction of her LTD benefits by the amount of dependent social security benefits received is unlawful because "these payments were not received as a loss of time disability payment and therefore are not a deductible source of income." (*Id.* ¶¶ 25-26.) She invokes 29 U.S.C. § 1132(a)(1)(B) as the basis for relief in Count I. (*Id.* ¶ 24.) In Count II, Schultz alleges that Prudential violated 29 U.S.C. § 1106, and therefore breached its fiduciary duty, by "engaging in self-dealing and acting pursuant to a conflict of interest" by "improperly offsetting dependent benefits contrary to the explicit terms of the policies." (*Id.* ¶¶ 30-36.) Finally, in Count III, Schultz brings a state law claim on behalf of individuals with ERISA-exempt plans.[1] (*Id.* ¶¶ 38-40.) Schultz alleges that Prudential's practice of reducing LTD benefits by the amount of dependent social security benefits received constitutes a breach of

---

[1] ERISA exempts certain employee benefit plans from its coverage. *See* 29 U.S.C. § 1003(b). For example, government and church plans are outside of ERISA's reach. *Id.*

these individuals' respective insurance contracts. (*Id.* ¶ 40.) In seeking monetary, declaratory, and equitable relief, Schultz relies upon both 29 U.S.C. § 1132(a)(1)(B) and § 1132(a)(3). (*See id.* ¶¶ 24, 27, 28, 30, 36.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

A motion under Rule 12(b)(7) seeks dismissal based on the failure to join a necessary party. *See* Fed. R. Civ. P. 12(b)(7). To evaluate a Rule 12(b)(7) motion, a court must engage in a two-step inquiry. First, the court must determine whether a party is a necessary party. Fed. R. Civ. P. 19(a); *Thomas v. U.S.*, 189 F.3d 662, 667 (7th Cir. 1999). To make that determination, the court must consider: "(1) whether complete relief can be accorded among the parties to the lawsuit without joinder; (2) whether the absent person's ability to protect its interest in the subject-matter of the suit will be impaired; and (3) whether any existing parties might be subjected to a substantial risk of

4

multiple or inconsistent obligations unless the absent person joins the suit." *Thomas*, 189 F.3d at 667. Second, if based on those factors it concludes that the party should, but cannot be, included in the action, the court will then decide whether the litigation can proceed at all in the party's absence. *Id.* If the court finds that "there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the action is subject to dismissal upon proper motion under [Rule]12(b)(7)." *Id.*

## ANALYSIS

### I. Count I

In Count I, Schultz seeks to recover benefits under Section 1132(a)(1)(B), which provides that a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Prudential argues that Count I should be dismissed because it is not the proper party-defendant to an ERISA claim for benefits. (R. 14, Def.'s Mem. at 5-6.)

The Seventh Circuit has held that "[g]enerally, in a suit for ERISA benefits, the plaintiff is 'limited to a suit against the Plan.'" *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610 (7th Cir. 2007) (quoting *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004)). In limited circumstances, however, individuals have been permitted to sue a party other than the plan in a claim for ERISA benefits. Specifically, the Seventh Circuit has recognized exceptions to its general rule where: (1) the employer and plan are closely intertwined; or (2) the ERISA plan documents refer to the employer and plan interchangeably.

*Mein v. Carus Corp.*, 241 F.3d 581, 584-85 (7th Cir. 2001) (allowing plaintiff to sue his employer to recover ERISA benefits because the employer and the plan were closely intertwined); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) (permitting a plaintiff to sue employer to recover ERISA benefits because the plan documents referred to the employer and plan interchangeably). In essence, these two exceptions allow a plaintiff to proceed against a party other than the plan–specifically the employer–when the identity of the plan is not discernable because of the close relationship between the employer and the plan.

Under the Seventh Circuit's general rule, Count I is barred because Prudential, as the issuer of the insurance plan, is not the plan and is therefore not the proper defendant in an ERISA claim for benefits. The Court also finds that the exceptions the Seventh Circuit recognized in *Mein* and *Riordan* do not apply because Schultz is not proceeding against her employer, but rather is suing the issuer of the plan. Moreover, the Court notes that even if it were to apply these exceptions to parties other than employers, Schultz's claim for benefits against Prudential fails because here, unlike *Mein* and *Riordan*, the identity of the plan is discernable. (*See* R. 24-3, Am. Compl., Ex. A at 5.)[2] Indeed, Schultz identifies the name of the plan in her complaint. (R. 27, Am. Compl. ¶ 8.) This conclusion is consistent with the decisions of other judges in this district which have dismissed insurers on the grounds that they are improper defendants in ERISA claims for benefits. *See, e.g., Mote*, 502 F.3d at 610-11 (affirming district court's dismissal of an insurance company serving as plan administrator in a suit for ERISA benefits on

---

[2] The Court may properly consider the content of the Aviall Plan document because is was an exhibit to the original complaint. *See Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004) ("Attachments to the complaint become a part of the complaint, and the court may consider those documents in ruling on a motion to dismiss.").

6

proper defendant grounds); *Eidmann v. Unum Life Ins. Co. of Am.*, No. 05 C 2183, 2005 WL 2304801, at *1-3 (N.D. Ill. Sept. 20, 2005) (dismissing a claim for benefits against insurer on proper defendant grounds); *Moffat v. Unicare Health Ins. Co. of the Midwest*, 352 F. Supp. 2d 873, 876-79 (N.D. Ill. 2005) (applying the Seventh Circuit's general rule and holding that an insurance company was not the proper defendant in an action for benefits brought under Section 1132(a)(1)(B)); *Matuszak v. Anesi, Ozmon, Rodin, Novak, & Kohen Ltd. Long Term Disability Plan*, No. 04 C 4152, 2004 WL 2452733, at *1-3 (N.D. Ill. Nov. 1, 2004) (same).

In response, Schultz primarily relies on two cases in arguing that Prudential is a proper defendant for Count I: *Penrose v. Hartford Life and Accident Insurance Company*, No. 02 C 2541, 2003 WL 21801214 (N.D. Ill. Aug. 4, 2003) and *Madaffari v. Metrocall Companies Group*, No. 02 C 4201, 2004 WL 1557966 (N.D. Ill. July 6, 2004). (R. 26, Pl.'s Mem. at 6.) In *Penrose*, the court allowed a Section 1132(a)(1)(B) claim to proceed against the insurance company which issued the plan. 2003 WL 21801214, at *3. After initially dismissing the case against the insurance company on proper defendant grounds, it subsequently reinstated the claim for benefits against the insurer because, even after limited discovery, the identity of the plan was unknown. *Id.* at *1-3. While noting the Seventh Circuit's general proper defendant rule in ERISA benefits cases, the court in *Penrose* allowed the suit to proceed because it determined that "the court of appeals is unlikely to hold that where the employer and/or administrator have failed to create or identify an entity known as a plan which can be sued, then a plaintiff is without a remedy in a suit to recover benefits." *Id.* Similarly, in *Madaffari*, the court also allowed an ERISA benefits suit to proceed against an insurance company because there was ambiguity regarding the identity of the plan. 2004 WL 1557966, at *2-5. The Court finds that neither

*Penrose* nor *Madaffari* provide Schultz support for her position because, here, unlike in those cases, there is no ambiguity or uncertainty regarding the identity of the plan.[3]

Under Seventh Circuit law, as most recently articulated in *Mote*, the Aviall Plan is the proper defendant in a claim for benefits under Section 1132(a)(1)(B). Since the complaint only names Prudential as a defendant, Count I is dismissed.[4]

## II. Count II

In Count II, Schultz alleges that Prudential violated 29 U.S.C. § 1106(a)(1),[5] and thus breached its fiduciary duty, by "improperly offsetting dependent benefits contrary to the explicit terms" of the relevant plans. (R. 27, Am. Compl. ¶¶ 31-35.)[6] As a remedy, Schultz seeks

---

[3] Schultz makes two final efforts to salvage her benefits claim against Prudential. First, she argues the Prudential is the proper defendant because "Plaintiff's class action claim is not against one plan in particular, but involves all policies issued by Prudential where dependent benefits have been unlawfully offset." (R. 26, Pl.'s Mem. at 6.) Second, Schultz contends that Prudential is the proper defendant for Count I because it has not contested its status as a proper defendant in other similar actions filed in the Seventh Circuit. (*Id.*) Both arguments fail to persuade because Schultz does not cite any case law for a relevant proposition or set forth any legal theory in support of these arguments. This Court will not develop legal arguments for her. *See Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (noting that "when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants") (internal citation omitted); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

[4] This conclusion renders any discussion of Prudential's argument for dismissal under Rule 12(b)(7) unnecessary.

[5] Schultz alleges that liability in Count II is predicated upon violations of "29 U.S.C.S. § 406(a)(1)." (R. 27, Am. Compl. ¶ 31.) This citation conflates the provision's location in the U.S. Code and its placement in the statute. Since Count II involves allegations of prohibited transactions, the Court will read Schultz's complaint as having invoked 29 U.S.C. § 1106(a)(1).

[6] The relevant language prohibiting certain transactions states: "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such

equitable relief under Section 1132(a)(3), which provides that a civil action may be brought by a "participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Prudential argues that Count II should be dismissed because Schultz's ability to pursue remedies under Section 1132(a)(1)(B) against the relevant plans forecloses her attempt to seek equitable relief under Section 1132(a)(3). (*See* R. 33, Def.'s Reply at 10.) Prudential relies on *Varity Corporation v. Howe*, 516 U.S. 489 (1996) as the foundation its argument. In *Varity*, the Supreme Court described Section 1132(a)(3) as a "catchall" provision that "acts as a safety net, offering appropriate equitable relief for injuries caused by violations that [Section 1132] does not elsewhere remedy." 516 U.S. at 512. In noting that Section 1132(a)(3) permits only "appropriate equitable relief," the Court stated that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515.

---

transaction constitutes a direct or indirect--
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title."

29 U.S.C. § 1106(a)(1).

9

Several circuit courts have interpreted *Varity* to hold that a plaintiff "whose injury creates a cause of action under Section 1132(a)(1)(B) may not proceed with a claim under Section 1132(a)(3)." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006); *see also Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006) ("[W]here a plaintiff is provided adequate relief by the right to bring a claim for benefits under . . . § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)[]."); *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287-88 (11th Cir. 2003) (stating that an ERISA plaintiff who has an adequate remedy under Section 1132(a)(1)(B) cannot alternatively plead and proceed under Section 1132(a)(3)); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615-16 (6th Cir. 1998) (noting that, in *Varity*, the "Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies"). Although the Seventh Circuit has yet to unequivocally join its sister circuits in their interpretation of the relationship between Sections 1132(a)(1)(B) and (a)(3), it has provided an indication of its likely interpretation.

In *Mondry v. American Family Mutual Insurance Company*, 557 F.3d 781 (7th Cir. 2009), a parent sued her former employer and insurance company for, among things, medical expenses she claimed were owed to her under her insurance plan. 557 F.3d at 784-92, 803. Pursuant to Section 1132(a)(3), she sought to recover these unpaid medical expenses from the insurance company. *Id.* at 803. The Seventh Circuit, in denying this form of relief, held that the requested monetary reimbursement was a remedy that Section 1132(a)(3), which provides for only equitable relief, does not authorize. *Id.* at 804-05. It then continued its analysis by citing *Varity*'s admonition that "where relief is available to a plan participant under other provisions of

the statute, relief may not be warranted under section 1132(a)(3)." *Id.* at 805. It further noted that the majority of circuits interpreting *Varity* "are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then relief is *un* available under subsection (a)(3)." *Id.* (internal citations omitted). Turning to the case before it, the Seventh Circuit stated that although it had not previously considered the relationship between these two subsections, the petitioners gave it "no reason to depart from the holdings of those circuits." *Id.* The Court reads *Mondry* as a strong indicator that the Seventh Circuit, like several other circuits, would find that if relief is available pursuant to Section 1132(a)(1)(B), then equitable remedies under Section 1132(a)(3) are unavailable.

Several judges of this Court have interpreted *Varity* in a similar fashion. Specifically, they have dismissed claims under Section 1132(a)(3) at the pleading stage where the requested relief was available under Section 1132(a)(1)(B). *See, e.g., Hakim v. Accenture United States Pension Plan*, No. 08 CV 3682, 2009 WL 2916842, at *4-8 (N.D. Ill. Sept. 3, 2009) (dismissing claims seeking relief under Section 1132(a)(3) where Section 1132(a)(1)(B) provided an adequate remedy); *Rice v. Humana Ins. Co.*, No. 07 C 1715, 2007 WL 1655285, at *2-4 (N.D. Ill. June 4, 2007) (dismissing claim invoking Section 1132(a)(3) because the remedy sought was identical to relief available under Section 1132(a)(1)(B)); *Jurgovan v. ITI Enters.*, No. 03 C 4627, 2004 WL 1427115, at *2-4 (N.D. Ill. June 23, 2004) (granting 12(b)(6) motion Section 1132(a)(3) claim which duplicated relief sought in claim for benefits under Section 1132(a)(1)(B)). Given the weight of authority, the Court finds that it must dismiss Schultz's Section 1132(a)(3) claim if adequate relief for her alleged injury is available under Section 1132(a)(1)(B).

In Count I, Schultz invokes Section 1132(a)(1)(B) and requests: (1) monetary relief for both herself and other members of the putative class; (2) a declaratory judgment stating that Schultz and other class members are entitled to monthly benefits without reduction for dependent social security benefits; and (3) an injunction preventing Prudential from reducing plan members' LTD benefits by dependent social security benefits received. (R. 27, Am. Compl. ¶¶ 27-28.) In Count II, which relies on Section 1132(a)(3) as its basis for relief, Schultz expressly incorporates the remedies sought in Count I.[7] (*Id.* ¶ 36.) In addition, she seeks to "enjoin [the] defendant from continuing to offset the future benefits of Plaintiff and other class members covered under plans or policies governed by ERISA." (*Id.*) Based on the Court's reading of Schultz's complaint, all of the remedies she seeks in Count II are requested in Count I. The Court therefore finds that the equitable remedies requested in Count II pursuant to Section 1132(a)(3) are both requested and available to Schultz and her proposed class under Section 1132(a)(1)(B). *See Great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 220-21 (2002) (noting that while Section 1132(a)(3) only provides for equitable relief, Section 1132(a)(1)(B) authorizes a participant to bring a civil action to enforce his rights under the terms of the plan "without reference to whether the relief sought is legal or equitable"); *see also Hakim*, 2009 WL 2916842, at *7 (finding that equitable remedies are available under Section 1132(a)(1)(B)); *Rice*, 2007 WL 1655285, at *4 (concluding that injunctive relief is available pursuant to Section 1132(a)(1)(B)). Section 1132(a)(1)(B) not only authorizes recovery of benefits due under the terms of the plan, but also allows plan participants to "enforce the terms of the plan." 29 U.S.C. § 1332(a)(1)(B).

---

[7] The Court notes that any request for monetary relief is unavailable under Section 1132(a)(3). *Mondry*, 557 F.3d at 804 (holding that monetary relief is not an authorized form of relief under Section 1132(a)(3)).

12

The Court finds that enforcement of the terms of the relevant plans can be achieved through the use of equitable remedies, including injunctive relief. Accordingly, the Court finds that because Congress, via Section 1132(a)1)(B), has provided adequate relief for the injury Schultz alleges, further relief under Section 1132(a)(3) is unavailable.

Schultz makes several arguments to prevent dismissal of her Section 1132(a)(3) claim. First, she contends that her claim for relief under Section 1132(a)(3) is distinct from her claim pursuant to Section 1132(a)(1)(B), and should thus survive a motion to dismiss. (R. 34, Pl.'s Surreply at 2.) In support of her argument, Schultz notes that some courts have allowed plaintiffs to proceed with claims for relief under both sections. *See, e.g., Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005); *Ehrman v. Standard Ins. Co.*, C06-05454, 2007 WL 1288465, at *4 (N.D. Cal. May 2, 2007); *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 902 (E.D. Wis. 2005). The Court finds these cases unpersuasive as all three found that because relief under Section 1132(a)(1)(B) was inadequate, further equitable relief under Section 1132(a)(3) was appropriate. *Hill*, 409 F.3d at 718 ("Only injunctive relief of the type available under 1132(a)(3) will provide the complete relief sought by Plaintiffs"); *Ehrman*, 2007 WL 1288465, at *5 (expressing uncertainty as to whether Section 1132(a)(1)(B) would provide adequate relief for the systemic wrongful acts alleged); *Black*, 373 F. Supp. 2d at 902 (concluding that plaintiff could not pursue the allegations or obtain appropriate relief under Section 1132(a)(1)(B)). Here, in contrast, the Court finds that Section 1132(a)(1)(B) provides adequate relief because it makes available all of the remedies Schultz and her putative class seek.

Additionally, Schultz's reliance on these cases for the proposition that claims for relief under Section 1132(a)(3) survive if they are sufficiently distinct from a claim brought under

13

Section 1132(a)(1)(B) is also misplaced. Under this Court's reading of the complaint, Schultz's Section 1132(a)(3) claim is essentially an effort by a beneficiary to "repackage his or her 'denial of benefits' claim as a claim for 'breach of fiduciary duty.'" *Varity*, 516 U.S. at 513-14. While Schultz alleges, in conclusory fashion, "self-dealing" and "act[ion] pursuant to a conflict of interest" as the grounds for her breach of fiduciary duty claim, in the very same paragraph she reveals the crux of her basis for relief under Section 1132(a)(3): the alleged "improper offsetting [of] dependent benefits contrary to the explicit terms of the policies." (*See* R. 27, Am. Compl. ¶ 35.) Without additional allegations suggesting a plausible breach of fiduciary duty, the Court finds that Count II is a thinly veiled effort to repackage a denial of benefits claim.

Next, Schultz argues that it would be inappropriate to dismiss her claim under Section 1132(a)(3) because at the pleading stage a court is unable to determine whether a plaintiff can recover her requested remedies under Section 1132(a)(1)(B). (*See* R. 34, Pl.'s Surreply at 3.) This argument fails because the relevant inquiry under *Varity* and its progeny is not whether she can actually recover, but rather whether an adequate remedy is available under Section 1132(a)(1)(B). *See, e.g., Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1089 (11th Cir. 1999) (failure on the merits of Section 1132(a)(1)(B) claim irrelevant because "the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor"); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (that plaintiff "did not prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable"); *Clark v. Hewitt Assocs., LLC*, 294 F. Supp. 2d 946, 949-50 (N.D. Ill. 2003) (finding that a plaintiff who has the right to bring a

claim under Section 1132(a)(1)(B), regardless of its merits, may not seek relief under Section 1132(a)(3)). The Court is thus unpersuaded by this argument.

Finally, Schultz contends that dismissing Count II on *Varity* grounds would violate Federal Rule of Civil Procedure 8(d)(2). (R. 34, Pl.'s Surreply at 3.) Specifically, she argues that "nothing in *Varity* overrules federal pleading rules" and concludes that the "dismissal of [her] [Section 1132(a)(3)] claim at this stage would be inconsistent with Federal Rule of Civil Procedure 8(d)(2), which allows plaintiffs to plead two alternate theories of liability." (*Id.*) Schultz is correct in noting that Rule 8 allows plaintiffs to plead alternative sets of facts and theories of liability.[8] Fed. R. Civ. P. 8(d)(2). Indeed, a plaintiff may set forth "inconsistent legal theories in his or her pleading and will not be forced to select a single theory in which to seek recovery against the defendant." 5 Charles Wright and Arthur R. Miller, Federal Practice and Procedure § 1283 (3d ed. 2004).

In her complaint, Schultz has pleaded two theories of liability under ERISA. In Count I, Schultz alleges that Prudential is liable to her and members of her putative class for failing to abide by the terms of the relevant plans, which, she contends, do not permit deductions for dependent social security benefits. (*See* R. 27, Am. Compl. ¶¶ 23-26.) In Count II, Schultz alleges that Prudential is liable for breaching its fiduciary duty by engaging in prohibited transactions. (*See id.* ¶¶ 29-35.) The Court finds that *Varity* and its progeny does nothing to unsettle Schultz's right to plead both theories of liability in her complaint. What *Varity* does limit, however, is her ability to invoke some of ERISA's civil enforcement provisions in certain

---

[8] Rule 8(d)(2) specifically provides that a "party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2).

circumstances. Specifically, as noted above, when adequate relief is available under Section 1132(a)(1)(B), a plaintiff is unable to use Section 1132(a)(3) as a basis for additional equitable relief. In this case, because of the adequacy of available remedies under Section 1132(a)(1)(B), this Court has found that Schultz is unable to avail herself of the remedies available under Section 1132(a)(3). Because this finding does not prohibit Schultz from asserting alternative theories of liability, but rather limits the availability of a remedial provision in ERISA's civil enforcement framework, the Court concludes that dismissing Count II on *Varity* grounds does not violate Rule 8. Other courts have agreed with this conclusion. *See, e.g., Hakim*, 2009 WL 2916842, at *6-7 (rejecting Rule 8 argument and finding that "dismissal of Plaintiff's equitable claims under *Varity* would not bar Plaintiff from asserting inconsistent legal theories, as Rule 8 allows, but from asserting the same legal theory twice under separate labels"); *Kaliebe v. Parmalat USA Corp.*, No. 02 C 8934, 2003 WL 22282379, at *4 (N.D. Ill. Sept. 30, 2003) (stating that dismissal of claim seeking relief under Section 1132(a)(1)(3) contradicted Rule 8, but finding that *Varity* required dismissal).

The Court finds that *Varity* and its progeny prohibits Schultz from seeking relief under Section 1132(a)(3) where adequate relief is available under Section 1132(a)(1)(B). Accordingly, Count II is dismissed.

### III. Count III

Prudential also argues that Count III should be dismissed. As a threshold matter, Prudential contends that the Court should dismiss Count III because Schultz lacks standing to assert a state law claim. (R. 14, Def.'s Mem. at 14.) Prudential maintains that because ERISA preempts Schultz's ability to assert a state law claim, she has not suffered an injury in fact and

16

thus lacks Article III standing to pursue Count III on behalf of members of the proposed class who participated in ERISA exempt plans. (*See id.* at 7-9.) In response, Schultz contends that she has standing to sue for relief based on the alleged violations outlined in Count III because although "the non-ERISA Plaintiff's claims are based on state law instead of ERISA, [she] possesses the same interests as the non-ERISA Plaintiffs, has suffered the same injury, and her claim is centered on the identical policy provision that would be unenforceable as to dependent Social Security benefits regardless of whether the insured is a participant in an ERISA plan." (R. 26, Pl.'s Resp. at 9.) Thus, the first question the Court must decide is whether Schultz has Article III standing to assert a state law claim on behalf of members of the putative class whose plans are ERISA-exempt.

An Article III standing inquiry "focuses on whether the plaintiff is the proper party to bring th[e] suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Simon*, 426 U.S. at 38). It is the "burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Spencer v. Kemna*, 523 U.S. 1, 11 (1998) (internal quotations omitted). To satisfy Article III's standing requirement, a party must establish: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008).

The Article III standing inquiry remains the same even if the case is proceeding as a class action: "That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they

17

personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon*, 426 U.S. at 40 n.20; *see also Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."). To have standing as a class representative, the plaintiff must be part of the class, "that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

To satisfy the first element of the Article III standing inquiry, a plaintiff must have suffered "an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). A particularized injury is one that affects the plaintiff in a "personal and individual way." *Id.* at 561 n.1. Moreover, a plaintiff must properly allege such an injury for each claim they seek to assert. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (stating that "the Court's standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press") (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)).

Count III avers that, as a result of the allegedly illicit reduction of dependent social security benefits from LTD benefits, Prudential has violated the contracts class members participating in ERISA-exempt plans entered into and has thus caused an injury. (R. 27, Am. Compl. ¶¶ 37-40.) Schultz argues that the injury in fact requirement has been

18

satisfied because all members of the putative class have suffered the same injury: the reduction of dependent social security benefits. (R. 26, Pl.'s Mem. at 8-10.) Her argument, however, fails to properly consider how the injury in fact requirement is defined in standing doctrine.

For Article III purposes, an injury in fact is defined as the "invasion of a legally protected interest" that affects the plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560, 561 n.1. Here, Schultz does not personally assert a violation of state law because such a claim would be preempted by ERISA.[9] (*See* R. 27, Am. Compl. ¶¶ 37-40.) Rather, she brings Count III on behalf of individuals participating in ERISA-exempt plans. (*See id.*) Thus, because under state law she does not have a legally protected interest, she cannot allege the invasion of an interest that would constitute an injury for Article III purposes.[10] Without an injury in fact with respect to Count III, Schultz has failed to show

---

[9] ERISA preempts any and all state laws insofar as they relate to an employee benefit plan established or maintained by an employer engaged in commerce. *See* 29 U.S.C. §§ 1003(a)(1) and 1144(a). As the Seventh Circuit has stated, "ERISA preemption is . . . not limited to displacement of state laws affecting employee benefit plans, but rather extends to any cause of action that has a 'connection or reference to' an ERISA plan." *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Neurobehavioral Assocs., P.A.*, 53 F.3d 172, 174 (7th Cir. 1995) (citations omitted). Here, Schultz understandably does not bring a claim under state law to remedy the wrong she allegedly personally suffered because such a claim would be preempted.

[10] Schultz argues that she has Article III standing because she has suffered an injury shared by all members of the class she seeks to represent. (R. 26, Pl.'s Mem. at 8.) In support of this argument, she relies upon *Ries v. Humana Health Plan*, No. 94 C 6180, 1997 WL 158337 (N.D. Ill. Mar. 31, 1997). Her reliance on *Ries* is misplaced because the named plaintiff and all members of the putative class in that case participated in ERISA-covered plans. *See id.* at *1. Moreover, the portion of *Ries* that Schultz relies upon primarily discussed standing under ERISA's civil enforcement provisions and not Article III. *See id.* at *5. The other cases Schultz uses to buttress her argument are similarly unilluminating. *See Sladek v. Bell Sys. Mgmt. Pension Plan*, 880 F.2d 972, 976 (7th Cir. 1989) (discussing ERISA, rather than Article III, standing); *Doe v. Guardian Life Ins. Co.*, 145 F.R.D. 466, 472 (N.D. Ill 1992) (same).

that she has standing to pursue a state law claim on behalf of class members who participated in ERISA-exempt plans. Accordingly, the Court dismisses Count III.

## CONCLUSION

For the foregoing reasons, Prudential's motion to dismiss (R. 13) under Rule 12(b)(6) is GRANTED.

Entered:

Judge Ruben Castillo
United States District Court

**Dated:** January 11, 2010