

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN G. SCHULTZ and<br>MARY KELLY,<br>on their own behalf<br>and on behalf of a class of all<br>persons similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>AVIALL, INC. LONG TERM<br>DISABILITY PLAN and PERKINS COIE<br>LONG TERM DISABILITY PLAN,<br>on their own behalf and on behalf of a<br>defendant class of certain ERISA plans insured<br>by Prudential Insurance Company of America,<br><br>        Defendants. | )<br>)<br>)   No. 09 C 2387<br>)<br>)   Judge Ruben Castillo<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Kathleen G. Schultz ("Schultz") and Mary Kelly ("Kelly") (collectively, "Plaintiffs") bring this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against the Aviall, Inc. Long Term Disability Plan ("Aviall Plan") and the Perkins Coie Long Term Disability Plan ("Perkins Coie Plan") (collectively, "Defendants") to recover long-term disability payments that were allegedly wrongfully withheld. (R. 49-2, Third Am. Compl.) Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 59, Defs.' Mot.) For the reasons stated below, the motion is granted.

# RELEVANT FACTS[1]

## I. The Plans

Under ERISA, the Aviall and Perkins Coie Plans are considered employee welfare benefit plans, (R. 49-2, Third Am. Compl. ¶¶ 7-8), which are plans maintained by an employer that are established for the purpose of, *inter alia,* providing for its participants or beneficiaries, through the purchase of insurance, "benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). The Aviall and Perkins Coie Plans provide long-term disability benefits under separate group insurance contracts issued by Prudential Financial ("Prudential"). (R. 49-2, Third Am. Compl. ¶¶ 9, 20.)

## II. Schultz

Schultz was a participant in the Aviall Plan, which provided long-term disability benefits ("LTD benefits") to disabled employees under the Aviall contract. (R. 49-2, Third Am. Compl. ¶ 9; Ex. A.) Up until November 30, 2006, Schultz was employed as an Operations Administrator at Aviall, Inc. ("Aviall"). (*Id.* ¶ 12.) Schultz stopped working at Aviall because of a disability. (*Id.*)

On December 1, 2006, the Social Security Administration concluded that Schultz was disabled. (*Id.* ¶ 14.) According to the Social Security Administration's notice of award, Schultz and her children became entitled to monthly disability payments beginning May 2007. (*Id.* ¶¶

---

[1] The relevant facts have been culled from Plaintiffs' complaint. The Court also considered the content of documents that were attached as exhibits to their complaint. Consideration of these exhibits on a motion to dismiss is proper where the relevant documents are attached to a complaint. *Witzke v. Femal,* 376 F.3d 744, 749 (7th Cir. 2004) ("Attachments to the complaint become a part of the complaint, and the court may consider those documents in ruling on a motion to dismiss.").

14-15.) Schultz informed Prudential of the Social Security Administration's decision by providing copies of the notice of award for herself and her children. (*Id.* ¶ 16.)

Schultz was approved for LTD benefits under the Aviall Plan on April 30, 2007. (*Id.* ¶ 13.) Over one year later, on June 26, 2008, Prudential claimed that an overpayment of $12,432.00 had occurred on Schultz's disability claim and demanded repayment of that amount. (*Id.* ¶ 17.) In a letter dated March 11, 2009, Prudential stated that the overpayment was a product of its failure to deduct the amount of dependent Social Security benefits paid to Schultz's children from Schultz's gross LTD benefits. (*See id.*) To recover this alleged overpayment, Prudential reduced Schultz's LTD benefits by the dependent Social Security benefits paid to her children. (*Id.*)

On March 19, 2009, Schultz appealed Prudential's deduction of dependent Social Security benefits and demanded the return of benefits she claims were wrongfully withheld. (*Id.* ¶ 18.) After considering the appeal, Prudential refused to change its position with respect to the deduction of dependent Social Security benefits from gross LTD benefits. (*Id.* ¶ 19.)

## III. Kelly

Kelly was a participant in the Perkins Coie Plan, which provided LTD benefits to disabled employees under the Perkins Coie contract. (*Id.* ¶ 20; Ex. B.) Kelly was employed as a trial attorney at Perkins Coie until March 2005, when she ceased working due to disability. (*Id.* ¶ 22.) The Social Security Administration found Kelly to be disabled as of March 2, 2005. (*Id.* ¶ 23.) According to the Social Security Administration's notice of award, Kelly became entitled to monthly disability benefits beginning September 2005; Kelly's children were also entitled to dependent benefits. (*Id.* ¶¶ 23-24.) Kelly informed Prudential of the Social Security

Administration's decision by providing copies of the notice of award for herself and her children. (*Id.* ¶ 25.)

Kelly was approved to receive LTD benefits from the Perkins Coie Plan on April 30, 2007. (*Id.*) On January 26, 2009, Prudential informed Kelly that her dependent Social Security benefits were deductible from the LTD benefits she was receiving from the Perkins Coie Plan. (*Id.* ¶ 26.) Kelly unsuccessfully appealed this decision to Prudential. (*Id.* ¶ 28.)

## PROCEDURAL HISTORY

Schultz originally filed this suit on April 20, 2009. (R. 1, Compl.) On January 11, 2010, the Court dismissed the original complaint. *See Schultz v. Prudential Ins. Co. of Am.*, 678 F. Supp. 2d 771, 783 (N.D. Ill. 2010). After denying leave to file a second amended complaint, the Court allowed Schultz to file a third amended complaint (the "complaint"), which added Kelly as a named plaintiff and, pursuant to the Court's opinion dismissing the original complaint, named a new set of defendants. (*See* R. 49-2, Third Am. Compl.)

In the complaint, Plaintiffs present one claim under 29 U.S.C. § 1132(a)(1)(B) ("Section 1132"). Under Section 1132, a civil action may be brought by a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). According to Plaintiffs, Defendants cannot deduct dependent Social Security benefits from the LTD benefits to which they are entitled; therefore, they aver, any such deduction is unlawful. (R. 49-2, Third Am. Compl. ¶ 31.)

On November 15, 2010, Defendants filed a motion to dismiss. (R. 59, Defs.' Mot.) In their supporting memorandum, Defendants argue that the language contained in the relevant

4

contracts plainly allows them to deduct from LTD benefits the "amount of dependent Social Security disability benefits paid to Plaintiffs' children on account of Plaintiffs' disabilities." (R. 61, Defs.' Mem. at 7.) Accordingly, they conclude, Plaintiffs' claims for allegedly wrongful deductions necessarily fail as a matter of law. (*See id.* at 14.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

## ANALYSIS

The interpretation of ERISA plans is governed by federal common law, which draws on general principles of contract interpretation to the extent they are consistent with ERISA. *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) (citing *Mathews v.*

5

*Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998)). Under these principles, contract language is given its plain and ordinary meaning. *Id.* (citing *Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir. 1996)). Contracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement. *Id.* (citing *Taracorp, Inc. v. NL Indus. Inc.*, 73 F.3d 738, 745 (7th Cir. 1996)). Contract interpretations should, to the extent possible, give effect to all language without rendering any term superfluous. *Id.* If a district court determines that the language of an ERISA plan is unambiguous, it may determine its meaning as a matter of law. *Cf. McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000).

In resolving this interpretive dispute, the Court must examine the specific language contained in the Aviall and Perkins Coie group insurance contracts separately.[2] After considering the text of the Aviall and Perkins Coie contracts, the language and intent of the Social Security Act, and general principles of contract interpretation, the Court concludes that dependent Social Security benefits were properly deducted from Plaintiffs' gross LTD benefits.

## I.  Aviall contract

Under the Aviall contract, the gross monthly LTD benefits provided to a participant amount to 60% of the participant's monthly earnings, subject to a $12,000 maximum monthly LTD benefit. (R. 49-3, Aviall contract at 11.) To determine the monthly LTD benefits to which

---

[2] In the briefing before the Court, the parties fail to make specific arguments with respect to the Aviall and Perkins Coie contracts. While there is admittedly considerable overlap in the issues involving these two contracts, the Court will examine them separately. The primary purpose of contract interpretation is to give effect to the objective intent of the contracting parties. *See, e.g., In re Airadigm Commc'n, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010). Because this intent is manifested by the language actually used in the relevant contract, *id.*, the Court will examine the Aviall and Perkins Coie contracts separately.

a participant is entitled, this gross monthly LTD benefit figure is reduced by "deductible sources of income." (*Id.*) The Aviall contract lists eight types of deductible sources of income. (*Id.* at 13-15.) Of importance here, it states that the following is a deductible source of income:

> The amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under: (a) the United States Social Security Act.

(*Id.* at 14.)

Prudential used this contract provision to deduct dependent Social Security benefits from Schultz's gross monthly LTD benefits. (*See* R. 49-2, Third Am. Compl. ¶¶ 11, 17.) According to Schultz, such a deduction under this provision is improper because dependent Social Security benefits are not "loss of time disability payments," but rather are paid to dependents "to compensate them for the fact they have a disabled parent." (R. 65, Pls.' Mem. at 5.) In determining the legality of this deduction, the Court must first examine the statutory grounds for the payment of dependent Social Security benefits and determine whether they can be considered "loss of time" disability payments.

The general intent of the old age, survivors, and disability insurance provisions of the Social Security Act is to "insure covered wage earners and their families against the economic and social impact on the family normally entailed by loss of the wage earner's income due to retirement, disability, or death, by providing benefits to replace the lost wages." *Califano v. Goldfarb*, 430 U.S. 199, 213 (1977); *see also Delno v. Celebrezze*, 347 F.2d 159, 161 (9th Cir. 1965). In extending Social Security disability benefits to dependents, Congress recognized that providing disability benefits only to the disabled worker did not provide adequate income protection and support for the worker's family. S. Rep. No. 85-2388, at 10 (1958), *reprinted in*

7

1958 U.S.C.C.A.N. 4218, 4228. Like disability benefits for the disabled worker, dependent Social Security benefits help provide some of the support and income that children are deprived of when a parent loses time from work. Because their availability is contingent upon a parent's time away from work, dependent Social Security are properly considered "loss of time" benefits.[3]

Applying this understanding of dependent Social Security benefits to the language in the Aviall contract, the Court concludes that the deduction in this case was proper. The contract language is unambiguous: it allows for the deduction of "loss of time" Social Security disability payments that a participant's children are entitled to receive because of the participant's disability. (R. 49-3, Aviall contract at 14.) Here, Schultz's children became entitled to dependent Social Security benefits after Schultz was found to be disabled by the Social Security Administration.[4] (*See* R. 49-2, Third Am. Compl. ¶¶ 14-45.) Since they were entitled to receive these "loss of time" Social Security disability payments benefits because of Schultz's disability, these payments are properly considered a deductible source of income under the Aviall contract, and can therefore be used to reduce Schultz's gross monthly LTD benefits. Schultz's claim for benefits, therefore, fails as a matter of law.

Schultz makes several arguments to avoid this outcome. Initially, as previously

---

[3] Plaintiffs do not challenge the deduction of Social Security disability payments paid to a parent. (*See, e.g.*, R. 49-2, Third Am. Compl. ¶ 27.)

[4] In her complaint, Schultz does not mention the statutory basis for the payment of dependent Social Security benefits to her children. (*See* R. 49-2, Third Am. Compl.) Her brief, however, suggests that the payments were made under 42 U.S.C. § 402(d). (R. 65, Pls.' Mem. at 5.) The Court will use the representations made in her brief to clarify the allegations in her complaint. *See Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (using plaintiff's brief to clarify unclear allegations in the complaint in a case involving a Rule 12(b)(6) motion to dismiss). In examining dependent Social Security benefits paid to her children, the Court will therefore consider 42 U.S.C. § 402(d).

mentioned, she argues that "[b]enefits paid to dependent children of Social Security disability benefit recipients in this context are not 'loss of time disability' payments." (R. 65, Pls.' Mem. at 5.) Building upon this contention, she asserts that "Social Security pays dependent benefits to children of disabled adults not as a means of income replacement, but to compensate them for the fact they have a disabled parent." (*Id.*) In support of the latter assertion, Schultz cites 42 U.S.C. §§ 402(d)(1)(A)-(F) ("Section 402(d)"). (*Id.*) The text of the statute Schultz relies upon, the Court concludes, definitively undermines her assertions.

Section 402(d) sets forth the terms and conditions of receiving "child's insurance benefits" under the Social Security Act. Contrary to Schultz's assertion, these benefits are not paid to children merely "for the fact they have a disabled parent." Instead, these benefits are paid to help compensate for the support and income a child loses when their parent becomes disabled. Two portions of the Social Security Act's statutory scheme support this conclusion. First, payments to a child are not made solely because of his familial relationship with the individual entitled to disability insurance benefits; rather, to receive Social Security benefits, the child must be dependent upon this individual. *See* 42 U.S.C. §§ 402(d)(1)(C); 20 C.F.R. § 404.350(a); 20 C.F.R. § 404.360. According to the relevant statutory language, dependency is clearly contingent upon support. *See* 42 U.S.C. §§ 402(d)(3)-(4). Thus, to be eligible for dependent Social Security benefits, a child must depend on an individual entitled to disability insurance benefits for support. Put simply, "[d]isability benefits paid to family members such as children are designed to provide the recipient for loss of support he or she sustains because of the disability of a parent." *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d 710, 716 (3d Cir. 1996). To say that dependent Social Security benefits are paid to children to "compensate them

for the fact they have a disabled parent" is simply incorrect.

A second portion of the Social Security Act's statutory scheme also supports the conclusion that dependent Social Security benefits are a form of income replacement. Specifically, the Court notes that the benefits a child receives are tied to Social Security benefits provided to the disabled individual which, in turn, are calculated based on the disabled individual's pre-disability monthly earnings. *See* 42 U.S.C. §§ 402(d)(2); 20 C.F.R. § 404.204; 20 C.F.R. § 404.317. Based on this intimate relationship between dependent Social Security benefits and the disabled individual's earnings,[5] it is evident that the former are used to help compensate for the income that is lost when a child's parent loses time from work as a result of a disability. Thus, this portion of the relevant statutory language also undermines Schultz's claim that dependent Social Security benefits are paid merely to "compensate [children] for the fact they have a disabled parent."

In sum, the Court concludes that these two portions of the Social Security Act establish that dependent Social Security benefits are paid to children to help compensate for the support and income they lose when their parent is unable to work because of a disability. These payments are therefore properly considered "loss of time" benefits.

Next, Schultz argues that "loss of time" is a technical term of art that excludes dependent Social Security benefits from its scope. (*See* R. 65, Pls.' Mem. at 5-6.) She fails, however, to

---

[5] In *Hopkins v. Cohen*, the Supreme Court noted that the scheme of the Social Security Act "proceeds from a recognition of an intimate relationship between the varying amounts of benefits due the disabled claimant and his dependents." 390 U.S. 530, 532 (1968). *Hopkins'* recognition of the intimate relationship between Social Security benefits paid to a parent and those provided to a dependent severely undermines Schultz's assertion that "'loss of time' benefits payable to the wage earner by Social Security for disability are distinct from the benefits paid to dependents by the Social Security Administration." (R. 65, Pls.' Mem. at 8.)

provide any persuasive authorities to support this argument. Specifically, the Court notes that Schultz's reliance on *Carstens v. United States Shoe Corp. Long-Term Disability Plan*, 520 F. Supp. 2d 1165 (N.D. Cal. 2007) is unhelpful. In *Carstens*, a district court found that the following contract language did not allow a deduction for dependent Social Security benefits:

> Periodic benefits, for loss of time on account of the Employee's disability, under or by reason of . . . the United States Social Security Act[.]

520 F. Supp. 2d at 1166-67.

Although the contract language in *Carstens* contains the term "loss of time," it differs from the language in the Aviall contract in that it fails to explicitly mention payments made to a participant's children. *See id.* This difference between the two contracts is critical. *See In re Unisys Corp.*, 97 F.3d at 715-17 (finding that a plan contract failing to specifically mention dependent benefits did not provide a basis for deducting those benefits). In addition to being distinguishable on its facts, the Court finds the reasoning in *Carstens* unpersuasive. Specifically, the Court is unconvinced by the district court's analytically unclear conclusion finding that dependent Social Security benefits were not deductible from LTD benefits because they "do not replace" a parent's lost income resulting from a "loss of time" from work. *See Carstens*, 520 F. Supp. 2d at 1168. As the Court has already concluded, because dependent Social Security benefits are contingent upon a disabled parent's time away from work, they are also properly considered "loss of time" benefits. And given the Aviall contract's specific reference to payments made to children, they are properly deductible from gross LTD benefits. Schultz does not submit any persuasive arguments or authorities establishing that "loss of time" is a technical term that necessarily excludes from its scope dependent Social Security benefits that, like

disability benefits provided directly to the parent, are paid as a result of a disabled parent's time away from work.

In addition, Schultz argues that dependent Social Security benefits are not "loss of time" disability payments because they "are not paid to the parent, but are paid to a representative payee who is responsible for using the payments for the child and not for the wage earner's benefit." (R. 65, Pls.' Mem. at 8.) Additionally, she contends that because dependent Social Security benefits continue to be paid after the parent has died, "it is clear that 'loss of time' benefits payable to the wage earner by Social Security for disability are distinct from the benefits paid to dependents by the Social Security Administration." (*Id.*) Neither contention, however, unsettles the Court's conclusion. Schultz points to no authorities suggesting that dependent Social Security benefits are stripped of their status as "loss of time" benefits because they are paid to a representative payee. (*See id.*) Similarly, the fact that dependent Social Security benefits continue to be paid after the parent has died does not alter the Court's conclusion. As stated above, dependent Social Security benefits are not a freestanding and distinct payment made to children "simply by virtue of being the child of a disabled adult." (*Id.* at 7.) Rather, they are paid to help compensate for the loss of income and support children experience when a parent they rely upon for support is unable to work.[6] Accordingly, dependent Social Security benefits are properly considered "loss of time" benefits.

Finally, Schultz invokes the *contra proferentem* rule in appearing to argue that the Aviall

---

[6] In support of her argument that dependent Social Security benefits are separate payments made to a dependent and thus not properly considered "loss of time" benefits, Schultz relies on *Meeks v. Mutual of Omaha Insurance Co.*, 388 N.E.2d 1362 (Ill. App. Ct. 1979). *Meeks*, however, does little to support Schultz's proposed interpretation. Not only is the contract language in *Meeks* distinguishable from the language in the Aviall contract, but the decision itself is thinly reasoned and, therefore, unpersuasive.

contract is ambiguous, and that the ambiguities in the contract must be interpreted against the Aviall Plan. (*See* R. 65, Pls.' Mem. at 9-11.) Again, this argument fails to persuade the Court. The *contra proferentem* rule is used to resolve ambiguities in contracts. *E.g., Barnett v. Ameren Corp.*, 436 F.3d 830, 834 n.2 (7th Cir. 2006). Here, the Court finds that the Aviall contract is unambiguous, therefore reliance on the *contra proferentem* rule is unnecessary.

Two additional points are worth emphasizing. First, the Court notes that Schultz provides no cogent basis for distinguishing between Social Security disability payments made to parents and those provided to a dependent. According to Schultz, parent Social Security disability benefits can be considered "loss of time" benefits, while dependent Social Security benefits–which are also paid because of a parent's disability and lost time from work–cannot be considered "loss of time" disability benefits. (*See, e.g.*, R. 65, Pls.' Mem. at 5.) Nothing Schultz has presented to the Court, however, adequately explains this distinction. As the Court has previously discussed, both types of benefits are predicated upon a parent's disability and loss of time from work; therefore both can properly be considered "loss of time" disability payments. Additionally, the Court notes that Schultz's proposed interpretation would effectively strip the term "children" from the Aviall contract. Under well-established principles of contract interpretation, such a reading is impermissible. *See Young*, 615 F.3d at 823.

Social Security benefits paid to Schultz's children can be considered "loss of time disability payments," and are therefore deductible from Schultz's gross LTD benefits. Thus, her claim for benefits fails as a matter of law.

## II. Perkins Coie contract

Like the Aviall contract, the Perkins Coie contract has a provision permitting the

13

deduction of certain payments and benefits from LTD benefits. (R. 49-3, Perkins Coie contract at 15.) The Perkins Coie contract specifically states that this deductible amount "is equal to the total amount of payments or benefits which for that Calendar Month or part of a Calendar Month are Periodic Benefits . . . payable to you or to your spouse or children based on your work and earnings[.]" (*Id.*) The contract lists five categories of deductible Periodic Benefits, one of which reads as follows:

> (B) Loss of time disability benefits payable under or by reason of: (2) The United States Social Security Act as amended from time to time. This does not include benefits paid to your former spouse or to your child living with such spouse.

(*Id.*)

Here again, the determinative interpretive issue turns on the scope and meaning of the term "loss of time." As established above, dependent Social Security benefits are properly considered "loss of time" disability payments. Because the Perkins Coie contract specifically mentions "loss of time disability benefits" paid to a participant's children, it unambiguously allows a deduction of dependent Social Security benefits from LTD benefits. Accordingly, Kelly's claim for benefits also fails as a matter of law. Put simply, Prudential properly deducted the dependent Social Security benefits Kelly's children received from the LTD benefits she was entitled to under the Perkins Coie contract.

## CONCLUSION

For the reasons state above, Defendants' motion to dismiss (R. 59) is GRANTED.

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated:** April 4, 2011

14