

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2889

KATHLEEN G. SCHULTZ and MARY KELLY,

*Plaintiffs-Appellants,*

*v.*

AVIALL, INCORPORATED LONG TERM DISABILITY PLAN,
PERKINS COIE LONG TERM DISABILITY PLAN, and
PRUDENTIAL INSURANCE COMPANY OF AMERICA,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-02387—**Ruben Castillo**, *Judge.*

ARGUED JANUARY 17, 2012—DECIDED MARCH 2, 2012

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.*  Plaintiffs Kathleen Schultz
and Mary Kelly brought this putative class action under
the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. § 1001 *et seq.* They seek to recover

2                                                    No. 11-2889

benefits under the long-term disability benefit plans
maintained by their former employers (Aviall, Inc. and
Perkins Coie, respectively) and issued by the Prudential
Insurance Company of America. Like many private
disability insurance plans, these plans provide for a
reduction of private disability benefits if the disabled
employee also receives federal disability benefits under
the Social Security Act, as both of these plaintiffs do.
The plaintiffs agree that some reduction of their private
benefits was correct, but they dispute the correct cal-
culation of the reduction.

   When calculating the amount of the reduction based
on Social Security disability benefits, both plans counted
both the amounts payable to each plaintiff under
42 U.S.C. § 423 (primary disability insurance benefits) and
amounts payable on behalf of their dependent children
under 42 U.S.C. § 402(d) (child's benefits based on
parent's disability). The plaintiffs contend that the plans
do not authorize Prudential to include in the offset cal-
culation the benefits paid to their dependent children
on account of the plaintiffs' disabilities. Both plans
require offsets for "loss of time disability" benefits. The
plaintiffs argue that a child's Social Security disability
benefit based on a parent's disability is not a "loss of
time disability" benefit. In the alternative, the plaintiffs
argue that the plan language is ambiguous and should
be construed against Prudential. Based on the relevant
plan language, the district court held that the children's
Social Security benefits based on their parents' total
disability counted as "loss of time disability" benefits
and dismissed the plaintiffs' case for failure to state a

No. 11-2889                                                    3

claim under Rule 12(b)(6). *Schultz v. Aviall, Inc. Long Term Disability Plan*, 790 F. Supp. 2d 697 (N.D. Ill. 2011). We review *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6), see *Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011), and we affirm.[1]

The issue is whether children's Social Security disability benefits paid based on a parent's disability are "loss of time disability" benefits under the language of the Aviall and Perkins Coie Long Term Disability Plans, and accordingly, whether Prudential acted properly when it reduced plaintiffs' private disability benefits based on their children's Social Security disability benefits. Under the Aviall Long Term Disability Plan, plaintiff Schultz's gross monthly long-term disability benefit amount was

---

[1] Because we find that the reductions were proper under the terms of the plans, we do not reach the second issue presented by the plaintiffs in this appeal: whether our precedents, such as *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996), holding that an insurer is not a proper party in an ERISA suit under 29 U.S.C. § 1132(a)(1)(B) should be revisited in light of *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) (holding that 29 U.S.C. § 1132(a)(3) does not limit the universe of defendants able to be sued under its terms), and *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011) (en banc) (extending the Supreme Court's analysis in *Harris* to section 1132(a)(1)(B) claims, and holding that an insurer is a proper defendant). In light of our holding on the merits, we reserve this second question for another case where the answer may make a difference in the outcome.

to be reduced by other "deductible sources of income." The Aviall Plan listed eight types of deductible sources of income, one of which was "The amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under . . . the United States Social Security Act." Likewise, under the Perkins Coie Long-Term Disability Plan, plaintiff Kelly's long-term disability benefits were subject to deductions of certain sources of income. The deductible amount was "equal to the total amount of payments or benefits which for that Calendar Month or part of a Calendar Month are Periodic Benefits . . . payable to you or to your spouse or children based on your work and earnings[.]" There were five categories of deductible "Periodic Benefits" under the Perkins Coie Plan, one of which was "Loss of time disability benefits payable under or by reason of . . . The United States Social Security Act as amended from time to time." Pursuant to these provisions, Prudential offset from plaintiffs' monthly long-term disability benefit payments the amount that each plaintiff's household was awarded in primary and dependent Social Security disability benefits. Consistent with the parties' arguments, and because the language of the offset provisions in the two plans is substantially similar, we consider the two plans and provisions together.

Before addressing the merits, we address the standard of review. The Supreme Court directs that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary

No. 11-2889                                                    5

authority to determine eligibility for benefits or to con-
strue the terms of the plan," in which case a deferential
standard of review is appropriate. *Firestone Tire & Rubber
Co. v. Bruch*, 489 U.S. 101, 115 (1989). If such discretion
is granted, court review is under the arbitrary and capri-
cious standard, but a plan's provision for deferential
review must be clear. See *Herzberger v. Standard Ins. Co.*,
205 F.3d 327, 331-32 (7th Cir. 2000). The Aviall and Perkins
Coie Long-Term Disability Plans do not contain language
conferring discretion on the plan administrators, al-
though attached to each policy is an "ERISA Statement"
that contains discretionary language. Where no discre-
tionary language is contained in the plan itself, discretion-
ary language contained in a summary plan description
is not sufficient to alter the standard of review. See
*Schwartz v. Prudential Ins. Co. of America*, 450 F.3d 697, 699-
700 (7th Cir. 2006). Thus, we review *de novo* the Plans'
interpretation of the offset provisions.[2]

---

[2]  In a footnote to their brief, the defendants claim that "discov-
ery would confirm that the Plans are vested with discretionary
authority to interpret Plan documents, subject to an arbitrary
and capricious standard of review." During argument, counsel
for the defendants claimed that a yet unproduced, broader,
"master" plan grants discretionary power, and that the docu-
ment would control if the plaintiffs' case survived on the
pleadings. Defendants filed their motion to dismiss before
discovery, but plaintiffs assert that they requested copies of
all plan documents and summary plan descriptions during
administrative appeals. In response, the defendants pro-
duced only the policies. The defendants do not dispute this, and

(continued...)

6                                                        No. 11-2889

Turning now to the merits, the plaintiffs agree that their own, primary Social Security disability benefits under section 423 may be used as offsets as "loss of time disability" benefits. They contend only that their children's Social Security disability benefits under section 402(d) do not constitute "loss of time disability" benefits, so that Prudential's use of their children's Social Security payments to offset plaintiffs' private disability benefits violated the plans. Essentially, they argue, the purpose of Social Security payments to a dependent child of a disabled parent is not to replace the income that the household has lost as a result of the parent's inability to work. The purpose is instead to provide additional "support" for the child. The phrase "loss of time" is a term of art, plaintiffs argue, meaning "loss of business time connected with the insured's occupation," citing 17 Couch on Insurance § 246.84 (3d ed. 2007). In their attempt to

---

[2] (...continued)
do not argue for a deferential standard of review — but claim they do so only because of the Rule 12(b)(6) standard.

Perhaps the defendants believed that the plaintiffs failed to word their requests for relevant plan documents using magic terms that would trigger production at the administrative level. From the defendants' description of the "master" plan, however, there is little doubt that they believe the document is controlling and thus clearly relevant to the plaintiffs' case. Yet defendants withheld it in pre-litigation discovery, risking sanctions of up to $110 per day, which might still be imposed. See 29 U.S.C. § 1132(c); 29 C.F.R. § 2575.502c-1. We are left to wonder why.

No. 11-2889                                                    7

distinguish "loss of time" or "disability" payments
made to dependents from "support" payments made to
dependents, they rely on language in *In re Unisys Corp. v.
Long-Term Disability Plan ERISA Litigation*, 97 F.3d 710,
716 (3d Cir. 1996), generally describing children's Social
Security disability payments as "designed to provide
the recipient for the loss of support he or she sustains
because of the disability of a parent." The plaintiffs
also rely on *Carstens v. U.S. Shoe Corporation's Long-Term
Benefits Disability Plan*, 520 F. Supp. 2d 1165 (N.D.
Cal. 2007), in which the district court accepted the
same arguments presented here and held that children's
Social Security disability benefits based on a parent's
disability are not "loss of time" benefits.

The interpretation of language in a plan governed
by ERISA is controlled by federal common law, which
draws on general principles of contract interpretation,
at least to the extent that those principles are consistent
with ERISA. See *Young v. Verizon's Bell Atl. Cash Balance
Plan*, 615 F.3d 808, 823 (7th Cir. 2010); *Mathews v. Sears
Pension Plan*, 144 F.3d 461, 465 (7th Cir. 1998). Plan lan-
guage is given its plain and ordinary meaning, and
the plan must be read as a whole, considering separate
provisions in light of one another and in the context of
the entire agreement. See *Young*, 615 F.3d at 823. All
language of a plan should be given effect without ren-
dering any term superfluous. The plaintiffs also argue
that, to the extent we reject their interpretation of the
phrase "loss of time disability" benefits, we should find the
words ambiguous and construe them against the party
that drafted the agreement and in the plaintiffs' favor.

8                                                              No. 11-2889

We do not believe the Aviall or Perkins Coie plan language on the offset is ambiguous, however. The only reasonable interpretation of the applicable language is that when a disabled employee's dependent children receive Social Security payments by reason of the parent-employee's disability, those benefits are disability benefits based on the employee's "loss of time." The offsets were permissible under these plans.

Virtually all courts considering this issue have found that dependent children's Social Security benefits were subject to offset under nearly identical policy language. See *Mayhew v. Hartford Life & Accident Ins. Co.*, 2011 WL 5024648, at *5-7 (N.D. Cal. Oct. 21, 2011) (denying insured's motion to dismiss plan's counterclaim because dependent Social Security disability benefits could be offset against insured's long-term disability benefits pursuant to policy language permitting offset of "loss of income" benefits paid to insured or insured's family under Social Security Act); *Fortune v. Group Long Term Disability Plan for Employees of Keyspan Corp.*, 588 F. Supp. 2d 339, 341-42 (E.D.N.Y. 2008) (denying insured's motion to amend complaint as futile because plan's language offsetting "loss of income" benefits provided to insured or her family because of the insured's disability would permit offset of dependent Social Security disability benefits), *aff'd,* 391 Fed. Appx. 74, 80 (2d Cir. 2010); *Pennell v. Hartford Life & Accident Ins. Co.*, 2010 WL 330259, at *5-7 (N.D. Ohio Jan. 21, 2010) (same, under arbitrary and capricious standard); *Kennedy v. Hartford Ins. Co.*, 2009 WL 3007921, at *4-5 (E.D.N.Y. Sept. 21, 2009) (same, under arbitrary and capricious standard),

No. 11-2889                                                            9

*aff'd*, 402 Fed. Appx. 610 (2d Cir. 2010). We find no mean-
ingful basis on which to distinguish the phrase "loss
of income" interpreted in these cases from the phrase
"loss of time" used in the plans at issue here. Although
the various agreements use slightly different language,
the "loss of income" and "loss of time" provisions are
intended to have the same consequence — to offset the
amount of money the insured employee receives as
replacement income pursuant to the employee's long-
term disability benefit by the amount of money that
the employee and his or her dependents receive as re-
placement income under the Social Security Act.

   To avoid this result, the plaintiffs rely heavily on lan-
guage in the Third Circuit's decision in *In re Unisys Corp.
v. Long-Term Disability Plan ERISA Litigation*, 97 F.3d 710,
716 (3d Cir. 1996), but it does not aid their cause. The
disability policy in that case said that offsets would
apply only to Social Security benefits received by the
claimants. It was silent on Social Security disability
benefits received by their dependent children. In de-
ciding that the claimants' benefits could not be offset by
amounts their children received, the court commented
that dependent children's Social Security disability
benefits "are designed to provide the recipient for loss
of support he or she sustains because of the disability
of a parent." *Id*. at 716. The court's choice of words
does not indicate that the court was differentiating be-
tween "support" and "income," and it certainly was not
intended to guide a case like this one, where the plans
refer specifically to offsets for Social Security benefits
paid to children. The court's language does not support

the plaintiffs' argument that a meaningful distinc-
tion should be drawn between the monetary and non-
monetary blows a household sustains when a bread-
winner is disabled.

The district court's decision in *Carstens* supports plain-
tiffs' case, but we respectfully disagree with that
court's analysis. *Carstens* dealt with an offset provision
like those at issue here: it provided that the defendant
could offset "periodic benefits, for *loss of time* on account
of the Employee's disability, under or by reason of . . . the
United States Social Security Act as amended from time
to time." See *Carstens*, 520 F. Supp. 2d at 1166 (emphasis
added). The plan referred specifically to amounts payable
to children. The court accepted Carstens' argument,
repeated by plaintiffs here, that "loss of time" is a term
of art that permits the offset of payments made to com-
pensate for the insured's lost income, but not to compen-
sate for the insured's disability or for support to the
insured's children. *Id*. at 1167. The *Carstens* court was
also persuaded by the fact that the dependent child
continues to receive benefits after a disabled parent
dies, and by the fact that the disabled recipient of the
child's benefit can spend that benefit only on the child's
needs. See 520 F. Supp. 2d at 1169, citing 42 U.S.C.
§ 402(d)(1)(C)(ii) and SSA Publication No. 05-10076.

We are not persuaded by these arguments. The plain-
tiffs' assertion that "loss of time" is a term of art does not
apply in this context. In the cases cited in *Carstens* and by
the plaintiffs here, the issue was whether there was
coverage under a disability insurance contract for an

No. 11-2889                                                11

insured's inability to work at his or her specific occupa-
tion or whether the contract covered an insured's
inability to work in any occupation. See 17 Couch on
Insurance § 246.84; *Weum v. Mut. Benefit Health & Accident
Ass'n*, 54 N.W.2d 20, 30 (Minn. 1952) (finding that jury
was properly instructed that the phrase "total loss of
time" in disability policy referred to the loss of business
time connected with the insured's specific occupation);
*Federal Life Ins. Co. v. Bolinger*, 193 N.E. 681, 682 (Ind.
App. 1935) (permitting recovery of benefits for both loss
of limb and "loss of time" under disability policy). That
distinction simply is not at issue in these plans or in
this case.

   The offset provisions in these plans refer specifically
to Social Security disability benefits paid to children.
These benefits are paid under the Act to compensate
the household for the loss of income it has suffered as a
result of the disability of one of its breadwinners. See
*Califano v. Goldfarb,* 430 U.S. 199, 213 (1977) (purpose of
the old age, survivors, and disability insurance provi-
sions of the Social Security Act is to "insure covered
wage earners and their families against the economic and
social impact on the family *normally entailed by loss of the
wage earners's income* due to retirement, disability or
death, by providing benefits *to replace the lost wages*")
(emphases added). The Act makes no distinction between
payments for "loss of time" or "loss of income" or "loss
of support." Nor does it recognize anything less than
total disability. To be awarded benefits under the Act,
an applicant for Social Security disability insurance
benefits must demonstrate that he suffers from "physical

12                                                        No. 11-2889

or mental impairment or impairments [that] are of
such severity that he is not only unable to do his
previous work but cannot, considering his age, educa-
tion, and work experience, engage in any other kind
of substantial gainful work which exists in the national
economy." 42 U.S.C. § 423(d)(2)(A). A successful ap-
plicant, then, must satisfy the Social Security Admin-
istration that he is unable to work at all because of his
disability, i.e., that his loss of time from work is total.

   As a result of that total loss of time, a Social Security
disability benefits recipient is entitled to a certain "pack-
age of benefits," including dependent child benefits. See,
*e.g.*, *Hopkins v. Cohen*, 390 U.S. 530, 534 (1968) (holding
that attorney fee award of percentage of "past-due
benefits to which the claimant is entitled" should
include percentage of payments to disabled claimant's
spouse and children based on his disability). Those de-
pendent benefits, then, are paid on account of the
primary recipient's total disability — or, put another way,
because of the primary recipient's total "loss of time"
from work. See 42 U.S.C. § 402(d)(1)(B). We are not
swayed, as the *Carstens* court was, by the fact that de-
pendents may continue to receive dependent Social
Security disability benefits after the primary recipient
has died, or the fact that the recipient receives a child's
Social Security disability benefits on behalf of and in
trust for the dependent child. The benefits that are
subject to offset under these plans are those paid under
section 402(d)(1)(B) based on the parent's disability. If
the disabled parent dies, these benefits for children

No. 11-2889                                                    13

become survivor benefits and are no longer subject to offset (but the private disability insurance benefits also cease in all likelihood). The overriding purpose of the benefits — to replace income lost due to a disabled parent's inability to work, see *Califano*, 430 U.S. at 213 — is unaltered. Social Security disability benefits, whether primary or dependent, are "loss of time disability" benefits paid because of the primary recipient's disability. Such payments fall squarely within the offset provisions of the plaintiffs' disability plans and accordingly may be used to reduce their long-term disability benefits.

The plaintiffs also rely on the legislative history of the Social Security Act, but the available history does not change our analysis. In 1958, when Congress amended the Act, the responsible committee wrote:

> In providing monthly benefits for the dependents of workers entitled to disability insurance benefits, the committee has given recognition to the problems confronting families whose breadwinners have been forced to stop work because of total disability. The benefit amount payable to the disabled worker under the present disability insurance provisions does not provide adequate protection for his family. The needs of the family of a disability insurance beneficiary are as great as, or greater than, the needs of the family of an old-age insurance beneficiary. It is reasonable to assume, also, that in a great many cases the care which the disabled person requires makes it difficult, if not impossible, for his wife to increase the family income by working. In addition, a

14                                                    No. 11-2889

> person receiving disability insurance benefits fre-
> quently has high medical expenses.

S. Rep. No. 85-2388 (1958), reprinted in 1958 U.S.C.C.A.N.
4218, 4228. This passage recognizes that the family of a
disabled worker suffers not only from the worker's loss
of wages but also from added expenses associated with
the disability. But contrary to plaintiffs' assertions, this
passage does not suggest that Congress meant to treat
primary and children's Social Security disability bene-
fits under the Act as anything other than replacement
income for the disabled person and his or her family. The
dependent's Social Security benefit therefore is based
entirely on the disabled parent's loss of income, which is
a measurement of that parent's total "loss of time."

Finally, plaintiffs' arguments simply fail to account
for the plan language calling for offsets based on Social
Security benefits that dependent children receive. The
Aviall plan requires offsets for amounts that "you, your
spouse *and children* receive . . . as loss of time disability
payments because of your disability under . . . the United
States Social Security Act," and the Perkins Coie plan
requires offsets for payments "to you or to your spouse *or
children* based on your work and earnings." The plans'
references to children must mean something with regard
to children's Social Security disability benefits. What is
plaintiffs' theory? The Social Security Act provides
benefits to the dependent child of a deceased, disabled,
or retired wage earner under 42 U.S.C. § 402(d)(1)(B).
Ordinarily, those benefits are discontinued when the
child reaches the age of 18, but they may be extended

No. 11-2889                                        15

under certain circumstances, such as if the child her-
self is disabled before the age of 22. See 42 U.S.C.
§ 402(d)(1)(E), (G).

The plaintiffs' theory is that the offset provisions
apply to this latter category of benefits — benefits pay-
able to the *disabled child* of a disabled parent — "in that
they compensate the recipient [child] for time away
from work due to a disability." By contrast, they argue,
Social Security payments made to a non-disabled child
of a disabled parent under 42 U.S.C. § 402(d)(1)(B)
do not compensate the recipient (child) for time away
from work and therefore may not be offset under the
plan language. Under the plaintiffs' formulation, then,
children's Social Security disability benefits paid to a
disabled child may be offset under the "loss of time"
language of the plans, while dependent Social Security
disability benefits paid to a non-disabled child may not.

In oral argument, we asked about this rather unusual
position by asking plaintiffs' counsel a hypothetical
question involving two households, each with a disabled
parent. Household A has a non-disabled dependent
child, while Household B has a disabled dependent
child. Under the plaintiff's reading of the plans, House-
hold B's monthly long-term disability benefit could be
offset based on dependent Social Security disability
payments, while Household A's monthly long-term
disability benefit could not. In other words, Household B
has suffered not only the disability of a former wage
earner but also the disability of a child, yet rather than
receiving the greater monthly benefit, it would receive

16                                                      No. 11-2889

the lesser. This outcome would be untenable and would verge on the unconscionable. In light of the plaintiffs' argument, we wish to make abundantly clear that the offset language in these plans would not apply to Social Security benefits paid because of the child's disability. The result the plaintiffs seek is not a reasonable interpretation of the plans' use of the phrase "loss of time disability benefits."

The judgment of the district court is AFFIRMED.

3-2-12